UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

MANUEL P., :
     Plaintiff, :
     :
    v. :   C.A. No. 20-234PAS
     :
ANDREW M. SAUL, :
COMMISSIONER OF SOCIAL SECURITY, :
     Defendant. :

**MEMORANDUM AND ORDER**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

    At the age of fifty-one, Plaintiff Manuel P., an obese individual, suffered a serious back injury while working as a plastic molding inspector in February 2017. He continued to work until January 18, 2018, when he stopped on advice of his treating physician. In June 2018, his workers compensation claim was resolved with a lump sum payment based on total disability. Also in June, he applied for Disability Insurance Benefits and Supplemental Security Income under the Social Security Act, 42 U.S.C. § 405(g). Due to an error in the exertional classification of Plaintiff's past relevant work, these claims were administratively denied despite a consultative examination report finding "significant pathology in his lower lumbar spine," Tr. 395, and state agency expert non-examining opinions finding him largely limited to sedentary work. The administrative law judge ("ALJ") who heard Plaintiff's claims did not replicate this error. Instead, however, she rejected all of the medical opinions of record and relied on her lay interpretation of the evidence to find that Plaintiff retained the residual functional capacity ("RFC")[1] to perform light work with postural and environmental limitations. With that RFC, she

---

[1] Residual functional capacity is "the most you can still do despite your limitations," taking into account "[y]our impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what you can do in a work setting." 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1).

found him able to do past relevant work and, therefore, not disabled.  The Appeals Council affirmed the ALJ's decision.

I.     BACKGROUND

The medical record reflects that, from onset on January 18, 2018, through to the date of the ALJ's decision (August 28, 2019), Plaintiff's back pain was treated with injections, nerve blocks and medication; while this treatment (particularly injections and nerve blocks) was intermittently helpful, after a time, the pain returned.  As Plaintiff testified, "[t]hey're just, like, a patch."  Tr. 58.

After onset, Plaintiff initially received treatment at monthly appointments at Baystate Medical Center in Massachusetts where he was then living.  In April 2018, Dr. Silvestrini-Martinez opined that conservative treatment of Plaintiff's back injury had failed and that the injury left him totally disabled.  Tr. 570.  However, after treatment with injections in April and again in July 2018, Baystate discharged Plaintiff (who was moving to Rhode Island) on August 16, 2018, with a note that reflected a normal examination and stated that he had "good relief with combo of lyrica and injections."  Tr. 388.  Baystate's closing "Impression and Plan" advises that Plaintiff may need more injections, may benefit from a referral to "PT" and needs "[w]ork hardening."  Tr. 391.

Following Plaintiff's move to Rhode Island, he had a lumbar spine x-ray and was seen by a state agency consulting physician, Dr. David Stoll, on September 12, 2018.  Tr. 387, 393-96.  Plaintiff told Dr. Stoll that "the pain really has returned" after a period of relief from severe pain due to treatment at Baystate; Dr. Stoll performed an examination and reviewed the x-ray; noting pain, difficulty in changing position, positive straight leg raises, limited tandem gait and severe discomfort on lying flat, his detailed report concludes that Plaintiff had "significant pathology in

his lower lumbar spine." Tr. 393-95. At the initial administrative phase, this file was reviewed by a state agency expert, Dr. Marta Madera. On September 19, 2018, she found Plaintiff capable of slightly more than sedentary work, limited by pain, limited range of motion, positive straight raise, lower extremity weakness and antalgic gait. Tr. 83-86. A few months later, on November 30, 2018, at the reconsideration phase, the file was reviewed again by another state agency expert, Dr. Youssef Georgy; he reviewed subsequent treating evidence (including the Baystate note from August 2018) and endorsed the same RFC findings. Tr. 96-99. Despite a sedentary RFC, however, Plaintiff was mistakenly found to be not disabled because one of his prior jobs ("past relevant work") was misclassified as sedentary. Tr. 100. With his applications denied due to this error, Plaintiff made a timely request for a hearing before an ALJ.

Meanwhile, Plaintiff had resumed treatment at Thundermist in Rhode Island with Dr. Michelle Lombardo, who noted untreated diabetes and chronic back pain. In November 2018 progress notes regarding diabetes management, there is a notation stating, "Pt has started going to the gym 3 times a week, walks on the treadmill for approximately 30 mins each day." Tr. 411. However, by Plaintiff's second appointment with Dr. Lombardo, she referred him to the Precision Pain Treatment Clinic, where he began to see Dr. Keith Perry for his back. At intake on February 15, 2019, Dr. Perry found Plaintiff's condition to be "severe"; on examination he noted pain to palpation, limited range of motion, positive straight leg raise, missing reflexes, limited strength, difficulty with the transition from sitting to standing and unsteady tandem gait. Tr. 506-09. In his assessment, Dr. Perry wrote that he planned to focus his treatment on Plaintiff's "severe back pain which limits his ability to work and carry on normal activities of any duration." Tr. 509. Dr. Perry's first round of injections and nerve blocks led to "an interesting chain of complaints" – more intense pain and tenderness – leading to further trigger

injections in March 2019. Tr. 434-36. In April 2019, Plaintiff was "much improved" and Dr. Perry concluded that there was no need for further pain treatment. Tr. 438-40.

In May 2019, Plaintiff told Dr. Lombardo that he had gone on a cruise and been able to walk on excursions. Tr. 512. In the same month, Dr. Lombardo completed a statement in which she confirmed that Plaintiff suffers from chronic low back pain, which is an "impairment[] [that] lasted or can . . . be expected to last at least twelve months." Tr. 442. However, Dr. Lombardo declined to fill in the RFC portion of the form, writing, "patient will need formal functional evaluation by qualified provider." Tr. 443. The only such assessments of record are the ones completed by the state agency experts, Drs. Madera and Georgy.

## II.    STANDARD OF REVIEW

A district court's role in reviewing the Commissioner's decision is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The determination of substantiality must be made upon an evaluation of the record as a whole. The Court "must uphold the Secretary's findings . . . if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981). The Supreme Court has defined substantial evidence as "more than a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Mary K v. Berryhill, 317 F. Supp. 3d 664, 666-67 (D.R.I. 2018). However, the ALJ is not at liberty to ignore medical evidence or substitute his own views for uncontroverted medical opinion. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999). When an ALJ's findings rest on improper lay judgments regarding matters that are well beyond the ken of common sense,

4

they are not supported by substantial evidence and should not be sustained. Jessica M. v. Berryhill, C.A. No. 17-464JJM, 2018 WL 6731549, at *1 (D.R.I. Nov. 7, 2018).

In reviewing the record, the Court must avoid reinterpreting the evidence or otherwise substituting its own judgment for that of the Secretary. See Colon v. Sec'y of Health & Human Servs., 877 F.2d 148, 153 (1st Cir. 1989). The "resolution of conflicts in the evidence is for the Secretary, not the courts." Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991).

"The First Circuit has stated that courts should ensure 'a just outcome' in Social Security disability claims." Santa v. Astrue, 924 F. Supp. 2d 386, 391 (D.R.I. 2013) (quoting Pelletier v. Sec'y of Health, Educ. & Welfare, 525 F.2d 158, 161 (1st Cir. 1975)). "[T]he Social Security Act is to be construed liberally to effectuate its general purpose of easing the insecurity of life." Rodriguez v. Celebrezze, 349 F.2d 494, 496 (1st Cir. 1965); see Cohen v. Sec'y of Dep't of Health & Human Servs., 964 F.2d 524, 531 (6th Cir. 1992) ("[I]t is well to bear in mind that '[t]he Social Security Act is a remedial statute which must be "liberally applied."'") (quoting Marcus v. Califano, 615 F.2d 23, 29 (2d Cir. 1979)); Slessinger v. Sec'y of Health & Human Servs., 835 F.2d 937, 943 (1st Cir. 1987) ("[T]he Social Security Act should be construed liberally in order to further its remedial purposes.") (citing Cunningham v. Harris, 658 F.2d 239, 243 (4th Cir. 1981)). Cunningham explains:

> [W]e are also bound to interpret the Social Security Act as a program of social insurance on which people can rely to provide for themselves and their dependents. Claimants are the beneficiaries of insured wage earners, not recipients of government gratuities, and are entitled to a broad construction of the Act. In practical terms, when a Social Security Act provision can be reasonably interpreted in favor of one seeking benefits, it should be so construed.

658 F.2d at 243 (citations omitted).

### III. DISCUSSION

In this case, the ALJ faced a medical record replete with medical opinions. Some (like the one signed by Dr. Silvestrini-Martinez) conclude that Plaintiff's back condition was "totally disabling" or (like Dr. Stoll's) that Plaintiff's back condition was a "significant pathology" or (like Dr. Perry's) that Plaintiff's back condition is "severe," albeit without providing a granulated functional assessment. Others (like those signed by the non-examining state agency experts, Drs. Madera and Georgy) reflect a function-by-function assessment; they are unanimous in finding Plaintiff's RFC to be limited largely to sedentary work.[2] Still another (primary care physician Dr. Lombardo) opined that Plaintiff's impairment had persisted for more than twelve months, but she declined to provide a functional analysis, which she found would have to come from "a qualified provider." No medical professional opined that, at any time since onset, Plaintiff has been capable of working at the light exertional level.

The ALJ rejected all of these sources. With a vocational expert whose testimony established that, because of his age and the nature of his prior work, Plaintiff is disabled unless he can perform light work,[3] she decided to rely on her own lay analysis of the medical evidence as support both for her finding that the work done by Drs. Stoll, Madera and Georgy was unpersuasive and for her finding that Plaintiff's RFC permitted him to do light exertional work. In so doing, she cherrypicked from the record, focusing on the August 2018 improvement following injections and on such references as "going to the gym" (reported during a diabetes

---

[2] The RFC as set by the file-examining state agency experts limits Plaintiff to lifting/carrying ten pounds occasionally and less than ten pounds frequently and sitting for six hours; these are sedentary limits. However, these physicians also opined that Plaintiff can stand/walk four hours (instead of two), putting Plaintiff over the sedentary threshold, but still less than what is necessary for light work. See Social Security Ruling ("SSR") 96-9p, 1996 WL 374185, at *3 (July 2, 1996) (sedentary work generally requires lifting/carrying ten pounds occasionally and less than ten pounds frequently, sitting six hours and standing/walking up to two hours in course of eight-hour workday); SSR 83-10, 1983 WL 31251, at *5-6 (Jan. 1, 1983) (light work generally requires lifting/carrying 20 pounds occasionally and ten pounds frequently, sitting two hours and standing/walking six hours in course of eight-hour workday).

[3] The Commissioner does not dispute that, if Plaintiff's RFC is limited as the state agency physicians opined, no work is available to him.

management review); as to the testing results, she substituted her own interpretation of the August 2018 x-ray for the interpretation performed by Dr. Stoll, the consulting physician chosen by the Commissioner to examine Plaintiff. Based on this lay analysis, she rejected all three state agency sources and concluded that "the overall medical evidence of record, which reflects limited and conservative spinal treatment, better supports a reduced light exertional capacity." Tr. 18.

It is well settled that, with "few exceptions . . . an ALJ, as a lay person, is not qualified to interpret raw data in a medical record." Mary K, 317 F. Supp. 3d at 668 n.5 (quoting Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 17 (1st Cir. 1996)) (alteration in original). When an ALJ substitutes her own judgment for that of the opining medical professionals, remand is required; an ALJ is simply not qualified to interpret raw medical data in functional terms when no medical opinion supports the determination. Nguyen, 172 F.3d at 35. The Commissioner tries to rectify the ALJ's error by asking the Court to reframe the ALJ's decision as holding that Plaintiff may have been as limited as the state agency physicians opined prior to August 2018, but that by the August 16, 2018, appointment at Baystate, only eight months following onset, he had improved significantly. After that, the Commissioner contends, the ALJ was permissibly relying on her common sense, buttressed by the November 2018 reference to the "gym" and by the May 2019 reference to a "cruise," to conclude that this improvement persisted through the date of decision. Citing Purdy v. Berryhill, 887 F.3d 7 (1st Cir. 2018), the Commissioner contends that an ALJ was entitled to make a "common-sense judgment[ ]" that a medical opinion is directly contrary to evidence that does not support an impairment of twelve-months' duration. Id. at 14 (alteration in original).

There are two problems with this approach.  First, <u>Purdy</u> affirms the decision of an ALJ whose rejection of a flawed treating source opinion that "made little sense on its face" was based not just on "common sense," but also was supported by the analysis of the non-examining physicians whose medical expertise was deployed in reviewing the record.  <u>Id.</u> at 12-13; <u>see</u> <u>Michele S. v. Saul</u>, C.A. No. 19-65WES, 2019 WL 6242655, at *6 (D.R.I. Nov. 22, 2019) (court can accept ALJ's common sense interpretation of treating source opinion when he also relied on analysis of state agency experts).  By contrast, the ALJ here rejected every medical source, including the state agency experts, leaving her RFC to rest solely on her own interpretation of the clinical findings of record.  Second, the factual record does not support the Commissioner's attempt to reframe the picture.  While it is accurate that, eight months post-onset (in August 2018), Plaintiff had a normal examination at Baystate,[4] in the months following this normal examination, Dr. Stoll's examination report and Dr. Lombardo's treating records both evidence that Plaintiff's pain and symptoms returned.  And in February 2019 (more than twelve months post-onset), Dr. Perry's findings on examination reflect an array of serious and limiting symptoms.  That is, a common sense read of this record simply does not support the conclusion of a sustained improvement beginning eight months post-onset.

## IV.   CONCLUSION

The ALJ's order denying Plaintiff's claim was not based on substantial evidence because she rejected the opinions and analyses of well-qualified medical professionals and relied solely

---

[4] It is also far from clear that this Baystate record supports the common sense conclusion that Plaintiff had improved to the point that he could perform light exertional work by August 2018, as the Commissioner argues.  While the examination results are normal, this record does not contain an opinion that Plaintiff is capable of work at any exertional level.  To the contrary, it recommends that Plaintiff receive "[w]ork hardening," suggesting he was found not yet able to work.  Tr. 391.  Further, the state agency expert, Dr. Georgy, specifically mentions his review of this record yet he concluded that Plaintiff had <u>not</u> improved but retained the same limitations as found by Dr. Madera.

8

on her own lay interpretation of complex medical evidence.  The Court remands this matter to the Commissioner for further action in conformity with this order.

      Based on the foregoing, the Court GRANTS Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 13) and DENIES the Commissioner's Motion for an Order Affirming the Decision (ECF No. 14).

ENTER:

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
March 12, 2021